XAVIER BECERRA
Attorney General of California
JULIE WENG-GUTIERREZ
Senior Assistant Attorney General
GREGORY D. BROWN, SBN 219209
NIMROD P. ELIAS, SBN 251634
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone: (415) 703-5841
  Fax: (415) 703-5480
  E-mail:  Nimrod.Elias@doj.ca.gov
*Attorneys for Plaintiff the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF ILLINOIS; THE STATE OF IOWA; THE COMMONWEALTH OF KENTUCKY; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MINNESOTA; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; and THE STATE OF WASHINGTON,<br><br>                                   Plaintiffs,<br><br>               v.<br><br>DONALD J. TRUMP, President of the United States; ERIC D. HARGAN, Acting Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, Secretary of the United States Department of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; and DOES 1-20,<br><br>                                   Defendants. | Case No. 3:17-cv-05895-KAW<br><br>**DECLARATION OF RUTH GREENE, VICE PRESIDENT, TREASURER AND CHIEF FINANCIAL OFFICER, BLUE CROSS BLUE SHIELD OF VERMONT ISO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

1

**DECLARATION OF BLUE CROSS AND BLUE SHEILD OF VERMONT**

Pursuant to 28 U.S.C. § 1746(2), I, Ruth Greene, hereby declare as follows:

1. I am Vice President, Treasurer and CFO at Blue Cross Blue Shield of Vermont ("BCBSVT"). I have served in this role since October 1, 2012. BCBSVT is a Vermont non-profit hospital and medical services corporation that has been a primary part of Vermont's health care system for more than 30 years. BCSBVT is the oldest and largest domestic health insurer in Vermont, providing coverage for more than a quarter of the state's population.

2. I have either personal knowledge of the matters set forth below or, with respect to those matters for which I do not have personal knowledge, I have reviewed information gathered from BCBSVT records and publicly available information.

3. Pursuant to federal and state law, BCBSVT offers cost-sharing reductions plans (CSR plans) to individuals who select such plans and are determined to be eligible for such plans by the State of Vermont. These CSR plans provide lower out of pocket costs to income eligible individuals at the same premium rate as a standard plan with higher out of pocket costs. For CSR enrolled individuals that utilize health services, if their claims costs exceed the CSR lower cost share, the federal government reimburses BCBSVT for the cost of those services up to the amount of the standard non-CSR plan cost share. For example, a CSR enrolled individual with a family of three and a household income at 150% of the federal poverty level would be responsible for a $300 family deductible, instead of the $5,800 family deductible for the non-CSR plan. The federal CSR reimbursement covers the difference between the $300 CSR deductible that is required by federal law and the $5,800 deductible that is funded by the approved premium, provided the insured individual accesses health care services.

4. In Vermont, qualified health plan (QHP) rates are approved by the Green Mountain Care Board (GMCB). Such rates are community rated within one merged market that

2

includes individuals and small employer groups with up to 100 employees. The QHP filing for 2018 rates was required to be submitted for review by the GMCB on May 11, 2017. For the 2018 rates, the health plans selling QHPs, such as BCBSVT, could not unilaterally decide how to adjust for CSR defunding and rates were filed assuming funding would continue. The GMCB approved rates which rely on the funding of the CSR program. GMCB's rate decision reflected that BCBSVT estimated that if the CSR program is defunded, BCBSVT would need to raise rates across all 2018 QHP plan metal levels an additional 1.9% to offset the financial losses caused by defunding of the CSR.[1] The GMCB's actuary found BCBSVT's calculation to be reasonable.[2]

5.      There are several options available to respond to the defunding of the CSR program all of which have negative impacts on customers and are expensive and complicated to implement. BCBSVT could decline to offer CSR plans, depriving lower income individuals of affordable access to health care services. Most CSR enrolled individuals and families cannot afford to access health services if the cost of the care is subject to a non-subsidized deductible and other cost sharing. As a result, such individuals may not purchase any insurance or may not go to the doctor or both. In addition, such care may go uncompensated and health care providers will see their uncompensated care rates increase dramatically. Likewise, BCBSVT could seek permission from the GMCB to raise the QHP rates above the currently approved rates to pay for the CSR plan subsidies. In Vermont, such a rate increase would likely be less than in other states because Vermont has a merged market, meaning that small employer groups and individuals all pay the same price for a QHP plan. Raising rates across the entire market (as currently required by Vermont law) would harm small businesses and increase the burden on

---

[1] GMCB 2018 QHP Rate Decision and Order Finding of Fact 25
[2] Lewis and Ellis Actuarial Opinion on BCBSVT 2018 QHP rates, p. 13.

3

individuals who purchase unsubsidized coverage. Small businesses and unsubsidized individuals and families comprise 87% of the QHP market. Currently, BCBSVT does not have authority to increase the rates on plans in the individual market only. If neither of these options are implemented, BCBSVT will suffer significant financial losses, likely exceeding $9,000,000, straining financial resources to pay for claims and significantly draining surplus (a reduction of 7-8% of total surplus) meant to protect members and providers in the case of unexpected risk events. Likewise, if BCBSVT were to try to implement rate increases in 2019 to cover the 2018 plan year losses, customers would experience rate shock as rates would not only reflect increased costs in care and utilization for 2019, but would reflect the CSR related losses from 2018.

Executed on this 17th day of October, 2017

*Ruth Greene*

Ruth Greene

4