XAVIER BECERRA
Attorney General of California
JULIE WENG-GUTIERREZ
Senior Assistant Attorney General
GREGORY D. BROWN, SBN 219209
NIMROD P. ELIAS, SBN 251634
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone: (415) 703-5841
 Fax: (415) 703-5480
 E-mail:  Nimrod.Elias@doj.ca.gov
*Attorneys for Plaintiff the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF ILLINOIS; THE STATE OF IOWA; THE COMMONWEALTH OF KENTUCKY; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MINNESOTA; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; and THE STATE OF WASHINGTON,<br><br>                                        Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, President of the United States; ERIC D. HARGAN, Acting Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, Secretary of the United States Department of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; and DOES 1-20,<br><br>                                        Defendants. | Case No. 3:17-cv-05895-KAW<br><br>**DECLARATION OF CORY GUSTAFSON ISO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

1

Declaration of Cory Gustafson, Commissioner of the Department of Vermont Health Access, ISO Plaintiffs'
Application for a Temporary Restraining Order (3:17-cv-05895-KAW)

## DECLARATION OF CORY GUSTAFSON

Pursuant to 28 U.S.C. § 1746(2), I, Cory Gustafson, hereby declare as follows:

1. I am the Commissioner of the Department of Vermont Health Access ("DVHA"). I have served in this role since January 2017. DVHA is responsible for facilitating access to quality, affordable health care for Vermonters. DVHA administers Vermont's Medicaid program as well as Vermont's health insurance exchange under the Affordable Care Act. Through the exchange, DVHA administers federal and state financial assistance programs for lower income Vermonters enrolled in private health insurance. This includes the Affordable Care Act's advance payment of the premium tax credit ("APTC") and cost-sharing reduction ("CSR") programs.

2. I have either personal knowledge of the matters set forth below or, with respect to those matters for which I do not have personal knowledge, I have reviewed information gathered from DVHA records and other publicly available information.

3. The Affordable Care Act establishes income-based eligibility standards for the CSR program. Individuals and families who do not have access to health coverage through their employer may be eligible for CSR if their income is up to 250 percent of the federal poverty level. In order to receive the CSR benefit, Vermonters must enroll in a silver level qualified health plan ("QHP") that has been certified by DVHA. Customers who are eligible for the CSR benefit based on their income are automatically enrolled into an enhanced version of the baseline silver plan they select. The design of these enhanced plans includes reduced cost sharing. More than 12,000 Vermont households have been enrolled in a federally funded CSR plan for all or part of 2017.

4. To finance the CSR benefit, the federal government makes payments to Vermont's QHP issuers based on the number of enrollees in the enhanced silver plans. In 2016, the federal

2

government paid a total of approximately $12 million to Vermont issuers to provide CSR benefits. In 2017, the payments were on track to be approximately $12.4 million.

5.    In Vermont, there are two QHP issuers: Blue Cross Blue Shield of Vermont and MVP Health Plan, Inc. The Green Mountain Care Board, which is the state agency responsible for approving the premium rates charged for health insurance, approved the rates that both issuers will offer in 2018 for the merged individual and small group market based on the assumption that federal CSR payments would continue through 2018.[1]

6.    Terminating CSR payments will cause harm to Vermont and its residents. Vermont's QHP issuers will be underfunded and seek to make up the difference elsewhere. This could come in the form of a rate increase such that the funding for the benefit is borne by the customers themselves. In Vermont, the individual and small group health insurance markets are merged; individual and small employers have the same options for health plan and rates. Therefore, the adverse impact of a rate increase would be felt beyond those Vermonters who receive the CSR benefit. Not only would health insurance become more expensive for individuals who do not qualify for the CSR program, premiums would also increase for those enrolled through Vermont's small businesses who, by definition, cannot benefit from the CSR program. Approximately 46,000 Vermonters are enrolled in a QHP either as a small business employee or as a family member of an employee as of September 2017.

7.    Without a funding source, the CSR program is at risk, and this will have a negative impact on health insurance coverage in the state. Vermont provides an additional state CSR benefit, or "wrap," to enrollees with incomes between 200 and 300 percent of the federal poverty

---

[1] *In re: Blue Cross Blue Shield of Vermont 2018 Vermont Health Connect Rate Filing*, GMCB-008-1755, Decision & Order ¶ 5 (Green Mt. Care Bd. Aug. 10, 2017), *available at* http://ratereview.vermont.gov/sites/dfr/files/2017/BCBSVT%202018%20Exchange%20Decision. pdf; *In re: MVP Health Plan, Inc. 2018 Vermont Health Connect Rate Filing*, Decision & Order ¶ 5, GMCB-007-17rr (Green Mt. Care Bd. Aug. 9, 2017), *available at* http://ratereview.vermont.gov/sites/dfr/files/2017/MVP%202018%20Exchange%20Decision.pdf.

3

level. It is virtually impossible to administer this state benefit without the federal program. More than 14,000 Vermont households have been enrolled in a CSR plan for all or part of 2017. This represents two-thirds of the entire individual market in Vermont. The loss of this financial assistance will make health insurance less affordable for all of these enrollees and unaffordable for many. As a result, it is likely to cause Vermonters to go without health care coverage which will adversely affect Vermont's uninsurance rate.

Executed on this 17th day of October, 2017

Cory Gustafson

4