Xavier Becerra
Attorney General of California
Julie Weng-Gutierrez
Senior Assistant Attorney General
Gregory D. Brown, SBN 219209
Nimrod P. Elias, SBN 251634
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5841
  Fax: (415) 703-5480
  E-mail: Nimrod.Elias@doj.ca.gov
*Attorneys for Plaintiff the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF ILLINOIS; THE STATE OF IOWA; THE COMMONWEALTH OF KENTUCKY; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MINNESOTA; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; and THE STATE OF WASHINGTON,** | Case No. 4:17-cv-05895-KAW<br><br>**DECLARATION OF MEG L. JONES, EXECUTIVE DIRECTOR, ASSOCIATION OF WASHINGTON HEALTHCARE PLANS, ISO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| Plaintiffs, | |
| v. | |
| **DONALD J. TRUMP, President of the United States; ERIC D. HARGAN, Acting Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, Secretary of the United States Department of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; and DOES 1-20,** | |
| Defendants. | |

1

I, Meg L. Jones, declare that I am over the age of eighteen. I make the following declaration based on firsthand knowledge and am competent to testify to the facts contained therein.

1. I am the Executive Director of the Association of Washington Healthcare Plans ("AWHP"). AWHP is a 501 (c)(6) non-profit organization representing the health care coverage industry in the state of Washington. AWHP membership consists of the majority of companies offering health plans in the state, and all of the companies offering health coverage on the state's health benefit exchange, HealthPlanFinder. Overall, AWHP's member companies provide health care coverage to over 6 million Washington residents.

2. Regence BlueShield, Premera, Kaiser Permanente, Coordinated Care and Molina filed individual health plans for review and approval by the Office of the Insurance Commissioner ("OIC"), and identified those plans as qualified health plans to be sold through HealthPlanFinder in 2018. Due to the uncertainty caused by the federal administration's threats to cancel CSR payments, these carriers were instructed to submit bracketed rates. These bracketed rates were essentially two sets of rates for silver plans that are sold through HealthPlan Finder: one rate that assumed Cost Sharing Reduction (CSR) reimbursements would be paid, and one rate that assumed CSRs will not be paid. On September 25, 2017, the Board of Directors of the health benefit exchange certified those OIC approved plans, a pre-requisite for the plans being offered for sale during open enrollment.

3. Each of these companies offered coverage in 2017 through the health benefit exchange. As a matter of law, they are required to prepare and mail notices to 2017 plan members advising them of their health plan renewal options for 2018. The OIC requires the notices to include a statement regarding the premium rate for coverage on the same or a similar metal level health plan for 2018. Depending on the type of health plan coverage a current member can access during 2018, these notices must be mailed 60-90 days before January 1, 2018. These notices were issued on October 1, 2017, and contained the lower bracketed rate that assumed CSRs would be paid.

4. On October 16, 2017, following the federal government's announcement that they would refuse to continue CSR reimbursement payments, Insurance Commissioner Mike Kreidler

2

submitted a letter to each of the companies directing them to use the bracketed rates that assumed CSRs would not be paid. These are different rates than the premium rates referenced in letters mailed October 1, 2017. As a result, each company must reissue renewal notice letters to every member, explaining the new, often higher rate. The cost of preparing, receiving OIC approval, and mailing these letters is approximately $25 per letter. Some companies use a vendor to prepare the letters, and others prepare the letters in house. Vendors charge additional monies for rush jobs, which this second batch of letters requires. In-house preparation requires overtime, again adding unforeseen administrative cost.

5.      The decision to purchase coverage, as well as whether to stay with the same health plan or switch carrier, is made each year by consumers buying individual market health plans. Confidence in the health plan is a critical factor in making these decisions. The need to notify members about higher rates so shortly after the initial announcement creates confusion for consumers, undermines consumer confidence in their health plan, and destabilizes the market. The difference, depending on the carrier, is between 9.43–27.3% higher rates. There is a real risk that a member may decide to pay the tax penalty for not having coverage if consumer confidence is undermined, and members receive information that their rates are increasing more than they were initially advised. The risk is particularly high that healthier, younger members will abandon the market, leaving only those who know they need health plan coverage to pay for medical and behavioral healthcare. This destabilizes the marketplace, as carriers need a risk pool that includes members who are healthy as well as those who are sick to ensure the premiums collected are sufficient to cover claims.

6.      Carriers' remedy to address the risk posed by market destabilization is either (1) raise rates so that the claims reserves are sufficient to pay for anticipated health care costs of a diminished risk pool, (2) stop offering coverage in counties with the highest health care costs or (3) withdraw from the individual market in Washington altogether.

7.      The Health Benefit Exchange commissioned an actuarial study by Wakely at the legislature's direction, assessing the viability of the individual market in Washington state. (Source: https://www.insurance.wa.gov/sites/default/files/documents/hbe-market-analysis-

final.pdf). That study found the Washington market was healthy and "thriving," both on and off the Exchange. As the current administration injected uncertainty about whether it would continue making CSR payments to carriers, the effect on carrier decision making was dramatic. Two carriers elected to stop offering individual coverage on the Exchange, and a third elected to leave the individual market. When 2018 plans were filed with the OIC for form and rate review, two Washington counties did not have a carrier planning to offer Exchange-based coverage. This meant that residents of that county did not have access to the affordable coverage available to lower income citizens, and would have to pay the equivalent of unsubsidized rates in the off-Exchange market.

8.    Carriers worked with the Insurance Commissioner to address this issue for 2018, and two carriers came forward to offer coverage in those counties.

9.    With the federal administration's decision to suspend CSR payments, carriers offering 2017 coverage to the 39,000 exchange members on the lowest cost silver plan must absorb the cost of subsidizing cost share reductions for those members, incurring significant financial losses.

10.    Carriers may still elect to withdraw from offering Exchange based coverage in 2018. Federal law permits such a withdrawal after certification if CSR payments are suspended. Even if carriers elect to stay in the individual market in 2018, there is a real risk that in 2019, carriers will withdraw from the individual market due to inability to manage risk, because the majority of purchasers will be sick.

11.    AWHP was founded in 1996, primarily to support advocacy efforts of health plans dealing with the collapse of the individual market in Washington when the risk pool was compromised by repeal of a state mandate to purchase coverage. Initially, the response was like that occurring today in response to the CSR payment suspension: health insurers sought a series of double-digit rate hikes in 1995 and 1996, based on the fact that consumers were buying insurance only when they got sick, sending costs skyrocketing. By November 1998, the three largest carriers decided to stop selling individual market health care coverage. With the administration announcing weak enforcement of the mandate to purchase coverage, and the

4

higher premium rates caused by suspension of CSR payments, the same market collapse is again imminent.

12.    When the individual market collapses, the social safety net must absorb the cost of providing health care for those 325,988 Washingtonians. (Source: https://www.kff.org/private-insurance/state-indicator/market-share-and-enrollment-of-largest-three-insurers-individual-market/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D) This in turn increases the cost of healthcare overall, and in turn results in higher premium rates for employer-based coverage in the small and large group health coverage markets.  Small group employers are not required to offer coverage to employees, and as premium rates increase, the return on such an investment diminishes.  Employees without coverage must access health plans through the individual market, which is now jeopardized by the suspension of CSR payments.

I declare under penalty of perjury that these statements are true and correct. Dated this 17th day of October 2017, at Olympia, Washington.

Meg L. Jones, Executive Director
Association of Washington Healthcare Plans

Declaration of Meg L. Jones, Executive Director, Association of Washington Healthcare Plans, ISO Plaintiffs' Application for a Temporary Restraining Order (3:17-cv-05895-KAW)