

Trinidad Navarro
Commissioner

Delaware Department of Insurance

I, Trinidad Navarro, declare and say as follows:

1.  I am Commissioner for the Delaware Department of Insurance ("DOI"), a Delaware state agency. I have served in this position since January 3, 2017.  The facts stated herein are of my own personal knowledge, and I could and would competently testify to them.

2.  As the Insurance Commissioner, I am responsible for the DOI's rate review process, which is a statutory obligation of the DOI. As part of the rate review process, the DOI reviews health insurance plans' (health plans) proposed rate increases in Delaware's markets.  The DOI's responsibility to review all rates includes rates submitted by insurers offering plans in Delaware through the federal health care marketplace.

3.  Delaware utilizes a State-Partnership Marketplace with the federal government.  Delaware consumers access marketplace health insurance plans through Healthcare.gov, the federal marketplace platform, with the State retaining responsibility for rate review, consumer assistance, and enrollment outreach.

4.  The rate review process serves a vital public purpose. It provides the DOI with an opportunity as a regulator of health plans to review proposed rate increases and announce to the public whether proposed rate increases are actuarially sound.

5.  If the DOI finds that a proposed rate increase fails to meet statutory requirements, it issues an order specifying in what respects it finds that such filing fails to meet such requirements.

6.  The DOI publishes the proposed rates for health plans participating in the marketplace on the DOI website after they are filed.  The DOI also holds public information sessions during which the insurers explain to the public how they arrived at their rate filings and to allow for public comment on the effects of those proposed rate increases.

7.  The DOI's public posting of the marketplace-related proposed rate increases, in conjunction with the public information sessions, serves an important function by allowing members of the public to be informed of the proposed increases and provide public comment on the proposed increases to the health plans and the DOI, including the effect that those proposed increases will have on the public in general.

8. Allowing sufficient time for the DOI's review is important to ensuring that the DOI has sufficient evidence to make a determination that the rate filings are supported by evidence and statutorily compliant. Making the proposed rate increases publicly available is crucial for consumers when they are evaluating their enrollment options, and comparing premiums and networks.

9. Proposed rate increases are driven largely by the plans' and the DOI's assumptions about market conditions and rules during the relevant rating period. If those assumptions prove incorrect, they could have serious consequences for consumers and health plans.

10. While setting rates is always a matter of judgment, the level of uncertainty regarding the continuation of the cost sharing reductions and amount of funding that is potentially effected is unprecedented. Uncertainty regarding whether the federal government will fund reimbursements for cost sharing reductions has the potential to cause wide variations in health plans' proposed rate increases for any year in which it is anticipated that cost sharing reductions will not be permanently funded.

11. By law, health plans provided through the marketplace must provide cost sharing reductions to consumers, regardless of whether they are funded by the federal government. If the federal government does not reimburse health plans for cost sharing reductions, it is expected that health plans will need to increase their premiums in order to compensate for this loss. This premium increase would be in addition to the rate increases the DOI anticipates the plans filing based on prior years' experience.

12. Delaware had only three insurers, Highmark BCBSD Inc. ("Highmark"), Aetna Health, Inc. and Aetna Life Insurance Company, providing health plans through the federal health care marketplace for plan year 2017, leaving its citizens particularly vulnerable to significantly increased premiums or the loss of any of these insurers from the federal marketplace for Delaware. In 2016, the DOI approved average premium increases of 32.4%, 23.6% and 22.8%, respectively, for the 2017 plan year to avoid having any plans exit the federal marketplace for Delaware.

13. On May 10, 2017, I was notified that two of the current insurers, Aetna Health, Inc. and Aetna Life Insurance Company, are withdrawing from Delaware's individual market. In notifying the DOI of its intention to withdraw from the market, Aetna cited the continued financial unsustainability of the plans and the current political turmoil surrounding the Affordable Care Act, including the uncertainty regarding the reimbursements of the cost sharing reduction payments. Prior to notifying the DOI of its intention to withdraw, Aetna had informed the DOI that it would have needed a premium rate increase of at least 55%

to continue in the market; however, the fluctuating legislative landscape has resulted in the ultimate determination to withdraw completely from the market.  Such a withdrawal may present statutory barriers to Aetna's reentering the market within a certain timeframe as provided under Delaware law.

14. As a result of Aetna's withdrawal from the Delaware marketplace, Delaware now has only one insurer, Highmark, participating in the Delaware marketplace for policy year 2018.

15. Highmark's initial marketplace rate filing for plan year 2018 requested a 33.6% rate increase for individual plans.  After completing the rate review process described above, which included the consideration of almost 200 public comments, many of which described the hardship that rate increases of this magnitude would have on those Delaware residents with limited income, I ultimately approved a rate increase of 25%.  Highmark's rate filing was comprised, in part, of a rate increase that reflected the possibility that the federal government would cease making cost sharing reduction payments.

16. My decision to approve a 25% rate increase for Highmark's marketplace plans necessarily included consideration of the possibility that Delaware would have no insurer participating on the ACA marketplace if Highmark opted to withdraw from the marketplace, which could have a devastating impact on the ability of Delawareans to purchase affordable insurance coverage.

17. If the federal government continues to refuse to make ongoing cost sharing reduction payments to insurers as required by the Affordable Care Act, I anticipate additional and substantial premium rate increase requests from insurers offering policies on the marketplace in future years.  There is also the possibility that Delaware's sole insurer participating in the 2018 marketplace may opt to withdraw from the marketplace altogether as a result of the lack of funding of the cost sharing reduction payments, leaving Delawareans with no options for affordable insurance coverage through the marketplace.

By: _Trinidad Navarro_

Trinidad Navarro
Delaware Insurance Commissioner
Date: October 16, 2017