XAVIER BECERRA
Attorney General of California
JULIE WENG-GUTIERREZ
Senior Assistant Attorney General
GREGORY D. BROWN, SBN 219209
NIMROD P. ELIAS, SBN 251634
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone: (415) 703-5841
  Fax: (415) 703-5480
  E-mail:  Nimrod.Elias@doj.ca.gov
 *Attorneys for Plaintiff the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF ILLINOIS; THE STATE OF IOWA; THE COMMONWEALTH OF KENTUCKY; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MINNESOTA; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; and THE STATE OF WASHINGTON,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**DONALD J. TRUMP, President of the United States; ERIC D. HARGAN, Acting Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, Secretary of the United States Department of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; and DOES 1-20,**<br><br>Defendants. | Case No. 4:17-cv-05895-KAW<br><br>**DECLARATION OF WAYNE THOMAS, CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE ISO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

1

Declaration of Wayne Thomas ISO Plaintiffs' Application for a Temporary Restraining Order (4:17-cv-05895-KAW)

**DECLARATION OF Wayne Thomas**

I, Wayne Thomas, hereby declare:

1.     I am the Chief Actuary for the Department of Managed Health Care (DMHC), a California state department. I have served in this position for six and a half years. The facts stated herein are of my own personal knowledge, and I could and would competently testify to them.

2.     As the DMHC's Chief Actuary, I am responsible for the DMHC's rate review program, which is a statutory obligation of the DMHC. As part of the rate review program, the DMHC reviews health care services plans' (health plans) proposed rate increases in California's individual and small group markets.

3.     The rate review program serves a vital public purpose. It provides the DMHC with an opportunity as a regulator of health plans to review proposed rate increases and announce to the public whether proposed rate increases are actuarially sound.

4.     If the DMHC finds that a proposed rate increase is unreasonable or unjustified, it posts a notice of this finding on its web site.

5.     Health plans are required by law to file their proposed individual rate increases with the DMHC at least 100 days before the start of the annual open enrollment period, and must publicly post these proposed increases at least 120 days before they are implemented.

6.     The requirement that health plans post their proposed rate increases at least 120 days before they are implemented serves an important function, allowing members of the public to

review the proposed increases independently, check the health plans' assumptions, and provide public comment on the proposed increases to the health plans and the DMHC.

7.      Allowing sufficient time for the DMHC's and the public's review is important to ensuring that consumers have accurate information about their health plans' proposed rate increases and whether the DMHC has found that they are supported by evidence. This information is crucial for consumers when they are evaluating their enrollment options, and comparing premiums and networks.

8.      Proposed rate increases depend entirely on the plans' and the DMHC's assumptions about market conditions and rules during the relevant rating period. If those assumptions prove incorrect, they could have serious consequences for consumers and health plans.

9.      Uncertainty regarding whether the federal government will fund reimbursements for cost sharing reductions has the potential to cause wide variations in proposed rate increases for any year in which cost sharing reductions are not permanently funded.

10.     By some estimates, not reimbursing cost sharing reductions would result in a loss of $250 million for California's health plans from September 2017 through December 2017.

11.     By law, health plans must provide cost sharing reductions to consumers, regardless of whether they are funded. If the federal government does not reimburse health plans for cost sharing reductions, health plans will need to increase their premiums in order to compensate for this loss.

12.     Because of uncertainty over whether reimbursement for cost sharing reductions will be discontinued, health plans have sought to file two alternative rates for plan year 2018, one

assuming the reimbursements will be made and one assuming they will not. The DMHC has accommodated alternative filings to ensure that health plans are not locked into rates that would cause them to incur large losses because cost sharing reductions are not reimbursed. Failing to accommodate health plans in this way and the concomitant losses could have significant negative consequences, including potential future market exits.

13.    Because health plans filed two proposed rate increases for 2018 with the DMHC, the DMHC needed to review both sets of proposed increases. This duplicative workload resulted in additional 140 staff hours from our internal actuarial staff and $13,000 spent on our external actuarial vendor.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed electronically, at my request, on September 14, 2017, while I was in Los Angeles, California.

Dated:  September 14, 2017

[Wayne Thomas]