## DECLARATION OF JOE WHITE

I, Joe White, hereby declare:

1. I am Chief Financial Officer of Molina Healthcare, Inc. and have served as Interim Chief Executive Officer and Interim President since May 2, 2017. I have been Chief Accounting Officer of Molina Healthcare, Inc. since June 2003. I have over 30 years of financial management experience in the health care industry. I am a Certified Public Accountant and hold a Master's degree in Business Administration and a Bachelor's degree in Commerce from the University of Virginia.

2. The facts stated herein are based on my own personal knowledge, and I could and would competently testify to them.

3. Molina Healthcare is a FORTUNE 500 company, providing managed healthcare services under the Medicaid and Medicare programs and through the insurance Marketplaces created by the Patient Protection and Affordable Care Act ("ACA") (also known as the "ACA Exchanges"). Through Molina's locally-operated health plans in 12 states across the nation and in the Commonwealth of Puerto Rico, Molina provides health insurance to more than 4.2 million members. Dr. C. David Molina founded our company in 1980 as a provider organization serving low-income families in Southern California. We continue to be headquartered in Long Beach, California as we pursue our mission of providing high quality and cost effective heath care to those who need it the most.

4.      Molina has offered health insurance plans for purchase through the ACA Exchanges since November 2013.  As a qualified health plan insurer under the ACA ("QHP"), we currently provide health insurance coverage through the ACA Exchanges to approximately 875,000 individuals across nine (9) states, which includes approximately 145,000 individuals in California

5.      Like all other QHPs offering health insurance plans through the ACA Exchanges, we are required by law to provide eligible individuals with a cost-sharing reduction ("CSR").  Specifically, Section 1402(a) of the ACA, 42 U.S.C. 18071(a), requires that QHPs participating on the ACA Exchanges "shall reduce the cost sharing" under the plans as prescribed in sub-section (c), which requires that QHPs reduce the out-of-pocket minimum payments for eligible plan members based on their income level.

6.      Section 1412(a) of the ACA, 42. U.S.C. Section 18082(a), requires that the Secretary of Health and Human Services ("HHS") "shall establish a program under which …. (3) the Secretary of the Treasury makes advance payments of such credit or reductions to issuers of the [QHPs] in order to reduce the premiums payable by individuals eligible for such credit."

7.      Section 1402(c)(3)(A) also requires that "the [HHS] Secretary shall make periodic and timely payments to [QHPs] equal to the value of the [CSR] reductions."

8.      Since the ACA Exchanges began operating on January 1, 2014, HHS reimbursed participating QHPs by making such CSR payments on a monthly basis as required by the ACA.  The CSR payments to Molina have been

substantial: in 2015, they totaled $72 million; and in 2016, they totaled $189 million. In 2017, Molina estimates that HHS will owe Molina in excess of $287 million in CSR payments. These totals represent net payments after reconciliation. Approximately 62% of Molina's ACA Exchange members, across nine (9) states, currently receive and depend on the CSRs that Molina is required to provide them under Section 1402(a) of the ACA.

9.    For the remainder of the 2017 plan year, October through December, 2017, Molina estimates that HHS will be required to pay Molina approximately $85 million in additional CSR payments. For the entirety of the 2017 plan year, Molina estimates that CSRs will represent nine percent (9%) of total claims costs in California. Nationally, across all nine (9) of our ACA Exchange states, Molina estimates that CSRs will represent thirteen percent (13%) of our total claims costs.

10.    Molina's agreement to participate in the new Exchange markets created by the ACA, and offer new QHPs with affordable annual premiums was premised on the cost-sharing and premium-stabilization components of the ACA, including, among others, the CSRs the government is required to pay under Sections 1412 and 1412.

11.    The government's obligation to make the CSR payments to Molina and other insurers as required by ACA Sections 1402 and 1412 is mandatory, not discretionary, and is not expressly limited in any way. The government's statutory promise to make the CSR payments each month induced Molina to participate and to offer QHPs on the ACA Exchanges.

12. But for the government's promise to pay the required monthly CSR payments, Molina would not have agreed to participate on the ACA Exchanges. Molina could not bear to incur the obligation to provide CSRs to eligible members without the corresponding obligation of the government to refund Molina for such CSRs offered to its members through reduced out-of-pocket payments.

13. Molina agreed to participate in the ACA Exchanges and to offer QHPs to eligible members in reliance on the government's "shall pay" promise set forth in ACA Sections 1402 and 1412. But for the government's monthly payment of the CSRs due to Molina during plan years 2014, 2015, and 2016, Molina would not have continued to participate in the ACA Exchanges each year.

14. Since at least January 20, 2017, the current Administration has repeatedly threatened publicly to stop making the required CSR payments to health insurers. The Administration's threats to stop CSR funding have created extreme instability and uncertainty in the ACA Exchange markets and have forced some insurers to pull out of ACA Exchanges all together, reduced participation on ACA Exchanges, and/or raised the premiums charged to members to account for the threatened loss of CSR payments.

15. The lack of predictability surrounding CSR payments was one of the primary factors driving Molina's decision not to offer ACA Exchange products in Wisconsin and Utah for the 2018 plan year, which will impact approximately 128,000 Molina members.

16. The instability and uncertainty created by the Administration's threats to cease making the required CSR payments is greatly exacerbated by the fact that Molina and other QHPs must continue to offer the required CSRs to eligible members unless HHS directs otherwise.

17. The lack of predictability in CSR payments based on the Administration's threats also led Molina to increase its premiums nationally by an additional 20%, on average, for the 2018 plan year. This increase was necessary to cover the anticipated costs of lost CSRs and the likely deterioration of the ACA Exchange risk pool. In California, these additional premium increases will take effect for the 2018 plan year.

18. I understand that on October 12, 2017, HHS directed that all CSR payments to insurers participating on the ACA Exchanges required by Sections 1402 and 1412 of the ACA be stopped entirely and further directed that the upcoming CSR payment due on October 18, 2017 will not be made.

19. This action by HHS immediately to stop the required CSR payments is a material breach of the government's clear statutory and contractual obligations to Molina and will cause Molina to suffer immediate financial harm.

20. Molina is due to receive a CSR payment of approximately $51 million from HHS on October 18, 2017, to reimburse Molina for the CSR reductions offered to eligible members who have enrolled in qualified plans but who have received CSRs from Molina in the form of reduced out-of-pocket limits pursuant to ACA Sections 1402(a) and (c).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed, at my request, on October 16, 2017, in Long Beach, California.

Dated: October 16, 2017          Signature_____

[Joe White]