XAVIER BECERRA
Attorney General of California
JULIE WENG-GUTIERREZ
Senior Assistant Attorney General
GREGORY D. BROWN, SBN 219209
NIMROD P. ELIAS, SBN 251634
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone: (415) 703-5841
  Fax: (415) 703-5480
  E-mail:  Nimrod.Elias@doj.ca.gov
*Attorneys for Plaintiff the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF ILLINOIS; THE STATE OF IOWA; THE COMMONWEALTH OF KENTUCKY; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MINNESOTA; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; and THE STATE OF WASHINGTON,<br><br>                                    Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, President of the United States; ERIC D. HARGAN, Acting Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, Secretary of the United States Department of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; and DOES 1-20,<br><br>                                    Defendants. | Case No. 4:17-cv-05895-KAW<br><br>**DECLARATION OF ELISABETH R. WYNN, SENIOR VICE PRESIDENT, GREATER NEW YORK HOSPITAL ASSOCIATION ISO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

1

Elisabeth R. Wynn, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am the Senior Vice President of Health Economics and Finance at the Greater New York Hospital Association (GNYHA), where I have been employed since 1999. My responsibilities with respect to Federal issues include policy development and technical expertise on Medicare and Medicaid payment policy, including implementation of the Affordable Care Act.

2.      I am offering this declaration in support of the State of New York, in support of plaintiffs' application for a temporary restraining order and order to show cause why a preliminary injunction should not issue.

3.      Founded in 1904, GNYHA is a trade association representing more than 160 member hospitals and health systems in New York, New Jersey, Connecticut, and Rhode Island. In New York, GNYHA represents approximately 139 hospitals across the state.

4.      GNYHA and its member hospitals and health systems have collaborated with other health care providers, State and local agencies and insurers to implement the ACA in New York with the goal of increasing health care coverage to as many New Yorkers as possible. There has been enormous success in reaching that goal: 11% of New Yorkers were uninsured in 2013, and as of 2016, only 5.4% remained without health care coverage.

5.      Individuals with health insurance coverage have more timely access to health care that is affordable. They are less likely to delay needed services or experience financial burdens associated with medical care. Insurance coverage also reduces hospitals' burden of uncompensated care, improving their financial stability.

6.      The Federal Emergency Medical Treatment and Labor Act (EMTALA) requires hospitals to provide emergency care to stabilize the patient, regardless of a patient's insurance status or

2

ability to pay. 42 U.S.C. § 1395dd. When the uninsured seek care in a hospital emergency room, hospitals must treat the patient and cover the costs. Additionally, hospitals in our membership which are all public or not-for-profit, tax-exempt organizations, go beyond this minimum standard, providing both emergent and non-emergent care to the uninsured, under-insured and indigent.

7.    Hospitals in New York have benefited from the deep drop in visits from uninsured individuals resulting from the Affordable Care Act. From 2013-2016, the number of emergency visits by the uninsured dropped by 23%, with an 8% mean annual reduction, while emergency room services provided to all patients increased by 6%. In 2013, the year before the New York State of Health Marketplace began enrolling New Yorkers, hospitals provided nearly 1,067,300 emergency room services to uninsured individuals. By 2016, the number decreased significantly to about 819,300.

8.    Other outpatient care saw similar trends. For all non-emergency outpatient visits, services provided to uninsured individuals dropped 19% from 2013-2016, with a mean annual drop of 7%.

9.    The number of inpatient discharges for uninsured patients at all hospitals in New York State dropped even more sharply. From 2013-2016, there was a 31% decline in inpatient services provided to uninsured individuals. In addition, the number of uninsured individuals requiring inpatient psychiatric and substance abuse/detox services during this time period dropped even more significantly, by 45%.

10.    As a result of the reductions in the number of uninsured individuals requiring services, New York hospitals' uncompensated care costs (bad debt and charity care) declined from 3.3% of operating costs in 2013 to 2.8% in 2015 (Medicaid and CHIP Payment Advisory Commission, March 2017).

11.     New York State hospitals, in the aggregate, have one of the lowest operating margins in the United States and thus are particularly vulnerable to Federal funding cuts and reimbursement losses. There are 28 voluntary (non-public) hospitals throughout New York State on a Department of Health "Watch List" for being at high risk of closure because they have less than 15 days' cash on hand, as well as other indicators of poor financial condition. These hospitals are receiving approximately $500 million in State operating subsidies to prevent unplanned closures, while the facilities transform into more sustainable operating models and transition to value-based payment methodologies. Many of these hospitals are in rural and underserved urban communities, where they are both the essential safety-net health care provider and a major employer.

12.     Several other hospitals in New York State have unstable finances and are at risk of being placed on the State Watch List. Any further decline in their financial condition from higher uncompensated care costs or Federal funding cuts would require increased state subsidies to prevent unplanned hospital closures and preserve access to care for their communities.

13.     The Administration's decision to stop the CSR subsidies comes at a terrible time for New York State hospitals. Effective October 1, 2017, cuts to Medicaid disproportionate share hospital (DSH) payments began to be phased in, which will result in approximately $550 million in Federal funding reductions to New York State hospitals over the next eighteen months, a figure that increases to $1.3 billion by 2024. On that same day, the Child Health Plus program was allowed to expire, threatening coverage for over 330,000 children in New York and costing New York State $1 billion annually. The cumulative effect of these funding losses presents a significant threat to New York State's financial plan and therefore, to our members and the broader health care community, in the form of possible Medicaid rate cuts and other funding reductions.

4

14.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 17, 2017

*Elisabeth R Wynn*

Declaration of Elisabeth R. Wynn, Senior Vice President, GNYHA ISO Plaintiffs' Application for a Temporary
Restraining Order (4:17-cv-05895-KAW)